IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

HELEN MEALY, *pro se*,  )
                        )
Plaintiff,              )
                        )
v.                      )   CIVIL NO. 3:10cv848-HEH
                        )
MICHAEL J. ASTRUE,      )
Commissioner of Social Security, )
                        )
Defendant.              )

## REPORT AND RECOMMENDATION

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1] Plaintiff, Helen Mealy, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her applications for Social Security Disability ("DIB") and Supplemental Security Income payments ("SSI"). The Commissioner's final decision is based on a finding by an Administrative Law Judge ("ALJ") that Plaintiff was not disabled as defined by the Social Security Act ("the Act") and applicable regulations.

For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion for summary judgment (ECF No. 12) be DENIED; that Defendant's motion for summary

---

[1] The administrative record in this case has been filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case. E.D. Va. Loc. R. 5, 7(C).

judgment (ECF No. 15) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed for SSI and DIB on September 3, 2008, claiming disability due to panic attacks, depression, and anger issues, with an alleged onset date of June 12, 2008. (R. at 10, 191.)[2] The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[3] (R. at 10, 54-56, 117, 127.) On May 13, 2010, accompanied by a non-attorney representative, Plaintiff testified before an ALJ. (R. at 23-53.) On June 11, 2010, the ALJ denied Plaintiff's application, finding that she was not disabled under the Act where, based on her age, education, work experience and residual functional capacity, there are jobs she could perform which exist in significant numbers in the national economy. (R. at 17-18.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 1-6.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

---

[2] Plaintiff also suffers from hypertension and asthma, but has not raised these conditions as a basis for her disability claim. (Pl.'s Mot. Sum. J. and Br. ("Pl.'s Br.") at 1.) Indeed, the record indicates that these conditions are well-controlled. (R. at 12, 314-19.) Accordingly, the Court addresses only Plaintiff's alleged mental limitations in its review of the ALJ's decision.

[3] Initial and reconsideration reviews in Virginia are performed by an agency of the state government — the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services — under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; *see also* § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

## III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. *Hancock v. Astrue*, __F.3d__, 2012 U.S. App. LEXIS 128, at *2 (4th Cir. Jan. 5, 2012) (citing *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. *Hancock*, 2012 U.S. App. LEXIS 128, at *2; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

To determine whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ].'" *Hancock*, 2012 U.S. App. LEXIS 128, at *2-3 (citation and internal quotation marks omitted); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed, regardless of whether the reviewing court disagrees with such findings. *Hancock*, 2012 U.S. App. LEXIS 128, at *14 (citation omitted). While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; *Mastro*, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" ("SGA").[4] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. *Id.* If the claimant establishes that she did not engage in SGA, the second step of the analysis requires her to prove that she has "a severe impairment . . . or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); *see also* 20 C.F.R. § 404.1520(c). To qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it

---

[4] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d).

If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to her past relevant work[5] based on an assessment of the claimant's residual functional capacity ("RFC")[6] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. *Id.* The burden of proof remains with the claimant through step four of the analysis, such that she must prove that her limitations preclude her from performing her past relevant work. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Hancock*, 2012 U.S. App. LEXIS 128, at *3 (citation omitted).

However, if the claimant cannot perform her past work, the burden then shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); *Hancock*, 2012 U.S. App. 128, at *3; *Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000) (citing *Bowen*, 482 U.S. at 146, n.5). The Commissioner can carry his burden in the final step with the

---

[5] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[6] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. *Id.* (footnote omitted).

5

testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." *Id.* If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## IV. ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset of her disability. (R. at 12.) At steps two and three, the ALJ found that Plaintiff had the severe impairments of an affective disorder with depression and anxiety and panic disorder, but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage. (R. at 12-14.) The ALJ next determined that Plaintiff had the RFC to perform the full range of work at all exertional levels, but that, as a result of her nonexertional limitations, that she is limited to work that involves understanding, remembering, and carrying out only simple instructions, as opposed to detailed and/or complex instructions. (R. at 14-17.)

The ALJ then determined at step four of the analysis that Plaintiff had not engaged in any past relevant work. (R. at 7.) At step five, after considering Plaintiff's age, education, work experience and RFC, and after consulting a VE, the ALJ nevertheless found that there are other occupations which exist in significant numbers in the national economy that Plaintiff could perform. (R. at 23-24.) Specifically, the ALJ found that Plaintiff could perform the

requirements of medium, unskilled work as dining room attendant; light, unskilled work as a cafeteria attendant; and sedentary, unskilled work as a production inspector/grader. (R. at 18.) Accordingly, the ALJ concluded that Plaintiff was not disabled and was employable such that she was not entitled to benefits. (R. at 18.)

Plaintiff moves for a finding that she is entitled to benefits as a matter of law. (Pl.'s Br. at 1.) But, Plaintiff does not articulate any specific error on the part of the ALJ, stating in conclusory fashion that she is disabled and entitled to benefits. Because Plaintiff proceeds *pro se*, the Court endeavors to liberally construe her argument as a challenge that the ALJ's decision at step five was not supported by substantial evidence. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed") (citations and internal quotation marks omitted); *Pearn v. Astrue*, No. 3:10cv 429, 2011 U.S. Dist. LEXIS 85705, at * 13 (E.D. Va. April 7, 2011) (construing a disability claimant's general challenge to the ALJ's decision as a challenge to the ALJ's RFC determination and step five denial of benefits). Defendant argues in opposition that the Commissioner's final decision is supported by substantial evidence and application of the correct legal standard such that it should be affirmed. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof ("Def.'s Br.") at 13-27.)

## A. Substantial Evidence Supports the ALJ's RFC Determination

In rendering his RFC determination in this case, the ALJ assessed the credibility of three categories of evidence: (1) Plaintiff's own testimony; (2) Plaintiff's medical records; and (3) the state agency physicians' opinions. Based on his credibility determinations, the ALJ placed the greatest weight on the medical records, concluding that they "do not support the severity of limitations that [Plaintiff] has alleged." (R. at 16.) Accordingly, he also found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not

7

credible." (R. at 15.) Finally, he considered the opinions of state agency medical and psychological consultants, concluding that they constitute "an overstatement of [Plaintiff's] limitations, given that there is little evidence of limitations in concentration or social functioning, and given the claimant's admitted activities." (R. at 17.)

In evaluating the credibility of a claimant's subjective symptoms, the ALJ must follow a two-step analysis. SSR 96-7p. *See also Craig*, 76 F.3d at 594; 20 C.F.R. §§ 404.1529(a) and 416.929(a). The first step is to determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms. *Id.*; SSR 96-7p, at 1-3. The ALJ must consider all the medical evidence in the record. *Id.* at 594-95; SSR 96-7p, at 5, n.3. *See also* SSR 96-8p, at 13. If the underlying impairment reasonably could be expected to produce the individual's pain or other related symptoms, then the second part of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and persistence of the symptoms and the extent to which they affect the individual's ability to work. *Id.* at 595. The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms and the ALJ must provide specific reasons for the weight given to the individual's statements. *Id.* at 595-96; SSR 96-7p, at 5-6, 11.

This Court must give great deference to the ALJ's credibility determinations. *See Eldeco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997). The Fourth Circuit has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" *Id.* (quoting *NLRB v. Air Prods. & Chems., Inc.*, 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is

8

unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" *Id.* (quoting *NLRB v. McCullough Envtl. Servs., Inc.*, 5 F.3d 923, 928 (5th Cir. 1993)).

In this case, the ALJ found Plaintiff only partially credible and based his RFC determination principally on the medical evidence. Specificially, the ALJ credited the alleged symptoms of mental impairment, but did not find credible the "intensity, persistence, and limiting effects" to which Plaintiff testified. Such a conclusion was due primarily to inconsistencies between Plaintiff's testimony and the information contained in the medical records. (R. at 15.) There exists exhaustive medical evidence supporting the ALJ's findings, far in excess of that which is required to satisfy the relatively low threshold of "substantial evidence." *Hancock*, 2012 U.S. App. LEXIS 128, at *2 (citations and internal quotation marks omitted) ("[Substantial evidence] consists of more than a mere scintilla of evidence but may be less than a preponderance"). Given such objective medical evidence, the Court is bound to accept the ALJ's RFC determination. *See, e.g., Verney v. Chater*, No. 95-1040, 1995 U.S. App. LEXIS 31968, at *8 (4th Cir. Nov. 14, 1995) (affirming ALJ decision based on a lack of objective medical evidence supporting limiting effects of mental impairments).

Several specific aspects of the medical record strongly support the ALJ's conclusion. First, Plaintiff's own therapist, Betsy Shires ("Shires"), explicitly recommended that Plaintiff seek employment in food service as recently as October 2008—four months *after* the alleged onset of disability. (R. at 374.) In addition, Plaintiff's medical records contain numerous notes by her treating physicians suggesting that she has responded well to her medication and therapy, suffering from fewer panic attacks, improved mood, and decreased anxiety. (R. at 372, 386-89, 398-400, 405-06.) When questioned on the subject, Plaintiff admitted that the medication has improved her condition. (R. at 39.)

9

At the same time, the medical records contain no evidence that Plaintiff's psychological condition can be characterized as "severe" in the sense that it causes more than a minimal effect on her ability to function — the medical records are simply silent on this point. 20 C.F.R. § 404.1520(c). Based on such a record, the ALJ's decision not to credit Plaintiff's testimony concerning the limiting effects of her psychological symptoms was well-supported. *See, e.g., Dettinger v. Astrue*, No. 3:09cv401, 2010 U.S. Dist. LEXIS 65484, at *8 (E.D. Va. June 30, 2010) (affirming ALJ decision that post-traumatic stress disorder was not severe and disabling where only conservative treatment was prescribed and the record lacked evidence of the condition's limiting effects on the claimant).

Moreover, several non-medical sources of evidence raise doubts about Plaintiff's credibility. For example, Plaintiff applied for unemployment benefits in June 2008, right around the time of her alleged disability onset date. (R. at 36.) To secure benefits, she informed the Virginia Employment Commission that she was able to work and actively searching for employment. (R. at 36.) The ALJ asked Plaintiff whether she really believed that she could work at that time, and she responded that she initially believed that she could still work. (R. at 37.) Only after experiencing frequent spells of drowsiness as a side effect of her medication did Plaintiff conclude that no employer would hire her. (R. at 37.) She did not, however, testify that any health professional told her that she was incapable of performing work. Nor did she testify that she could not perform specific functions required by the food service industry, as her therapist had recommended to her. (R. at 372.)

In addition, Plaintiff has indicated that she continues to take care of her personal needs by preparing complete meals, cleaning, washing laundry, engaging in household repairs, ironing, mowing the lawn, shopping for groceries, and more. (R. at 15, 38, 219-24.) At the same time,

she continues to perform tasks that require social interaction, including caring for her grandchildren and preparing Sunday dinners for her entire family. (R. at 30, 38-39, 45-47.) Together with the objective medical evidence, such non-medical evidence constitutes substantial evidence supporting the ALJ's credibility findings. *See, e.g., Davis v. Astrue*, No. 3:10cv701, 2011 U.S. Dist. LEXIS 133038, at *18-19 (E.D. Va. Oct. 11, 2011) (finding that the combination of conservative treatment and the ability to take care of personal needs constitutes substantial evidence supporting ALJ's findings).

The ALJ also considered the opinions of state agency physicians and psychologists, as he is legally required to do. SSR 96-6p. at 2. The state agency experts opined that, in addition to the limiting effects found by the ALJ, Plaintiff is limited in concentration and social functioning. (R. at 80, 110-11.) However, there existed some discrepancy between the medical records and the non-examining state agency physician opinions, because the medical records contain no identifiable, objective medical evidence of Plaintiff's alleged limitations in concentration or social functioning. Accordingly, the ALJ assigned "appropriate" weight to the state agency physician opinions, but did not rely on those aspects of the opinions that were "overstated" with regard to concentration and social functioning. (R. at 17.) Both the medical and non-medical evidence, already discussed with regard to Plaintiff's credibility, *supra*, constitutes substantial evidence supporting the ALJ's decision to only partially credit the state agency physician opinions in this manner.

Accordingly, based on the Court's review of the complete record in this case, the Court recommends a finding that the ALJ's findings are supported by substantial evidence and the correct application of legal standards.

### B. Substantial Evidence Supports the ALJ's Step Five Determination

At the fifth step of the sequential analysis, the Commissioner must show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f). It is well established that the Commissioner can carry his burden in the final step with the testimony of a VE. *Morgan v. Barnhart*, 142 Fed. App'x 716, 720-21 (4th Cir. 2005) (citing *Walker*, 889 F.2d at 50)). As noted earlier, when a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. *Walker*, 889 F.2d at 50. Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." *Id.*

Here, the ALJ posed the following hypothetical:

> [A]ssume a hypothetical person of [Plaintiff's] age and education. Assume that this person has no relevant work experience; assume that she is able to, well also assume that she has no physical limitations; she is able to understand, remember and carry out simple instructions; can respond appropriately to supervision, to co-workers, and usual work situations; and can deal appropriately with changes in a routine work setting; assume that she can work in proximity to others without being distracted or being a distraction herself; that she can maintain socially appropriate behavior; and that she can concentrate well enough to perform simple job tasks; assume that she can perform activities within a schedule, maintain regular attendance, and complete a normal work day and work week without interruptions from psychologically based symptoms; and can perform at a consistent pace without an unreasonable number and length of rest periods. Can you identify any occupations for which such a person would be vocationally suited?

(R. at 50-51.) In response, the VE provided three non-exhaustive examples of work that such an individual could perform. At the medium exertional level, she identified the position of a dining room attendant, of which 134,000 such jobs exist in the national economy, including 4,000 in

12

Virginia. At the light exertional level, the VE testified that Plaintiff could work as a cafeteria attendant, of which 139,000 jobs exist in the national economy, as well as 4,000 in Virginia. Finally, at the sedentary level, she testified that Plaintiff could work as a production inspector-grader, for which 41,000 jobs exist in the national economy, as well as 900 in Virginia.

To satisfy his burden at step 5, the ALJ was not required to meet a substantial threshold, as barely more than one-hundred (100) local jobs has been held to be sufficient. *See Hicks v. Califano*, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979). Accordingly, given the VE's testimony, the ALJ satisfied his burden of demonstrating that Plaintiff can perform other work that is available in significant numbers in the national economy.

For these reasons, the Court recommends a finding that the ALJ satisfied his burden at step 5, and that his decision be affirmed on this basis.

## V. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's Motion for Summary Judgment (ECF No. 12) be DENIED; that Defendant's Motion for Summary Judgment (ECF No. 15) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

Let the Clerk file this Report and Recommendation electronically, notifying all counsel of record, forward a copy to Plaintiff at her address of record, and forward a copy to the Honorable Henry E. Hudson.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of**

any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.

                                                /s/
                                           David J. Novak
                                           United States Magistrate Judge

Richmond, Virginia
Dated: February 16, 2012